FILED
03/06/2024
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2023 Session

## ANN CALABRIA v. CORECIVIC OF TENNESSEE, LLC

**Appeal from the Circuit Court for Davidson County**
**No. 18C2607        Amanda Jane McClendon, Judge**

_____

### No. M2023-00424-COA-R3-CV

_____

The mother of an incarcerated person filed suit against the prison operator for injuries allegedly sustained when a chair in the prison visitation room collapsed as she sat in it. The trial court denied the mother's motion for sanctions based upon allegations of spoliation of evidence. The trial court then granted summary judgment in favor of the prison operator. We affirm the trial court's decisions on both motions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Aaron Davis Armstrong and Joseph P. Bednarz, Jr., Hendersonville, Tennessee, for the appellant, Ann Calabria.

Erin Palmer Polly, Joseph F. Welborn, and Kaitlin Elizabeth White, Nashville, Tennessee, for the appellee, CoreCivic of Tennessee, LLC.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

This premises liability action arose from an incident that occurred on October 13, 2017, at the Metro-Davidson County Detention Facility when Ann Calabria went to the facility to visit her son, Matthew Johnson, who was incarcerated there. At that time, the detention facility was operated by CoreCivic of Tennessee, LLC. Ms. Calabria's visit took place in a large visitation room containing round metal tables with attached metal chairs. On that day, Ms. Calabria requested and was provided a gray plastic chair (without arms), a supply of which was kept in a nearby hallway. After Ms. Calabria had been sitting in the chair for some period of time, she attempted to stand up to go to the vending machine. The

legs of the plastic chair started to bend, and Ms. Calabria slowly sank to the floor with her legs extended.

Immediately after the accident, Ms. Calabria informed Officer Craig Kuhn and Captain Eddra Hawkins that she felt "okay." Officer Kuhn and Mr. Johnson helped her up from the floor, and someone brought Ms. Calabria another gray plastic chair, which she sat in for the remainder of the visit. After sitting for a few minutes, Ms. Calabria told the officers that her knee felt "hyperextended." She declined to complete a statement about the incident. Ms. Calabria also declined offers of medical assistance. Officer Kuhn walked her out to the lobby and offered to walk her to her car. Ms. Calabria declined the offer and walked to her car unassisted. Officer Kuhn prepared an incident report to document the accident. The broken plastic chair was discarded on the day of the accident.

On October 12, 2018, Ms. Calabria filed suit against CoreCivic alleging that she sustained serious injuries in the accident. Prior to that date, CoreCivic had not received any communication from Ms. Calabria since the day of the accident. On November 2020, Ms. Calabria filed a consolidated motion for sanctions for spoliation of evidence and motion to compel discovery. Before a scheduled hearing date, Ms. Calabria withdrew the motion.

CoreCivic filed a motion for summary judgment in March 2022, supported by an affidavit, interrogatory responses, and deposition excerpts.

Ms. Calabria filed a motion for sanctions based upon spoliation of evidence in April 2022. She asked the court to sanction CoreCivic by entering default judgment in her favor on the issue of liability. In her motion, Ms. Calabria asserted that CoreCovic had "spoliat[ed] all of the material evidence in this case." In particular, Ms. Calabria identified the following items as having been spoliated: (1) the plastic chair, (2) the original incident report, and (3) surveillance videos from three cameras in operation on the day of the accident in the visitor's room. In response, CoreCivic explained its failure to produce each of these items. As to the chair, CoreCivic stated that it had disposed of the plastic chair on the day of the accident in accordance with its "routine practice of disposing of items that no longer were functional or that were broken." CoreCivic also provided its reasons for such a policy, which will be discussed more fully below.

According to CoreCivic, the original handwritten incident report prepared by Officer Kuhn was not stored electronically, which was consistent with CoreCivic's practices. Once notified of the lawsuit, CoreCivic allegedly discovered that the incident report had been misplaced; despite "diligent efforts," the incident report was never found. CoreCivic asked Office Kuhn to rewrite the incident report, which he did, and a copy of the replacement report was provided to Ms. Calabria. In his deposition, Officer Kuhn testified that, to the best of his knowledge, the recreated report was "the same" as his original report.

CoreCivic further stated in its response to Ms. Calabria's motion that the surveillance videos from the three cameras in the visitation room had been automatically overwritten after approximately sixty days, in accordance with CoreCivic policy. CoreCivic would save video footage beyond the sixty-day period if there was a specific request or under certain circumstances, for example when there had been an assault in the detention facility. In the case of the video footage at issue here, CoreCivic asserted, the facility had no reason to preserve the footage and had received no request to preserve the footage prior to the sixty-day automatic overwriting period.

In an order and memorandum opinion entered on August 10, 2022, the trial court denied Ms. Calabria's motion for sanctions. CoreCivic's motion for summary judgment was heard by the trial court in early December 2022. In a memorandum opinion and an order entered on February 21, 2023, the court granted CoreCivic's motion for summary judgment. The court found that Ms. Calabria had "failed to present any evidence of the nature or creation of the Chair's alleged defect or dangerous condition." Further, the court found that Ms. Calabria "failed to present any evidence that CoreCivic knew or had reason to know about the Chair's defect or alleged dangerous condition." Ms. Calabria appeals.

Ms. Calabria has presented this Court with three issues on appeal: (1) whether the trial court erred in denying her motion for sanctions for spoliation of evidence; (2) whether there existed genuine issues of material fact that made summary judgment inappropriate; and (3) whether the trial court erred in granting CoreCivic's motion for summary judgment without considering CoreCivic's failure to preserve evidence.

STANDARD OF REVIEW

Two different standards of review are applicable in this case. In our review of a trial court's decision to impose or deny sanctions, we apply an abuse of discretion standard. *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 746-47 (Tenn. 2015). The trial court's discretionary decision will be set aside only when ""the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence."" *Id.* at 747 (quoting *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004) (quoting *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999))). An appellate court "should allow discretionary decisions to stand even though reasonable judicial minds can differ concerning their soundness." *Mercer*, 134 S.W.3d at 133.

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692,

695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

ANALYSIS

I.    Motion for Sanctions

Ms. Calabria brought her motion for sanctions pursuant to Rules 34A.02 and 37 of the Tennessee Rules of Civil Procedure.  Tennessee Rule of Civil Procedure 34A.02 provides that, "Rule 37 sanctions may be imposed upon a party or an agent of a party who discards, destroys, mutilates, alters, or conceals evidence."  Under Tenn. R. Civ. P. 37, a court may impose a range of sanctions, including dismissal, upon a party for failing to obey an order to provide or permit discovery.  TENN. R. CIV. P. 37.02.; *Tatham*, 473 S.W.3d at 739.

A trial court's decision to impose or not to impose sanctions for the spoliation of evidence rests in the court's wide discretion.  *Tatham*, 473 S.W.3d at 746.  Our Supreme Court has held that the analysis to be applied in making such a determination "should be based upon a consideration of the totality of the circumstances."  *Id.*  The Court further laid out the following factors relevant to the trial court's consideration as to "what, if any, sanction should be imposed" for spoliation:

(1) the culpability of the spoliating party in causing the destruction of the evidence, including evidence of intentional misconduct or fraudulent intent;
(2) the degree of prejudice suffered by the non-spoliating party as a result of the absence of the evidence;
(3) whether, at the time the evidence was destroyed, the spoliating party knew or should have known that the evidence was relevant to pending or reasonably foreseeable litigation; and
(4) the least severe sanction available to remedy any prejudice caused to the non-spoliating party.

*Id.* at 746-47.  As Ms. Calabria emphasizes, "intentional misconduct is not a prerequisite for a trial court to impose sanctions for the spoliation of evidence."  *Id.* at 746.

While acknowledging that the trial court cited the correct standard applicable to considering requests to impose sanctions for spoliation, Ms. Calabria asserts that the court "focuses too narrowly on [CoreCivic's] apparent lack of intentional misconduct."  She asserts that "all of the factors weighed immensely in her favor" and that the trial court erred in failing to enter a default judgment in her favor as to liability.  She asserts that CoreCivic violated its own policies and acted negligently, that the absence of the evidence "places an insurmountable burden" on her to prove her case, that CoreCivic should have known that

- 4 -

the evidence would be relevant to "reasonably foreseeable litigation," and that default judgment is the "least severe sanction available." For the reasons set forth below, we respectfully disagree.

## A. The plastic chair

There is no dispute that Officer Kuhn placed the chair at issue in the garbage on the day of the accident. The trial court made the following statements regarding CoreCivic's actions in discarding the chair:

> [Officer Kuhn discarded the chair] because the "integrity" of the Chair had become an issue—it was no longer functional. CoreCivic had a routine practice of disposing of items that were no longer functional or that were broken. Not only was the chair not functional, but it was taking up valuable space. Further, CoreCivic explained that every item in the facility potentially can be a weapon that an inmate can use to harm himself or harm someone else. A broken plastic chair could be sharpened and used to create plastic knives or shivs. For this reason, a broken chair promptly needed to be removed to outside the confines of the Facility.
>
> CoreCivic has explained why the chair promptly needed to be removed from the Detention Facility. Not only was the chair taking up valuable space, but it was a potential danger to inmates, staff, and visitors of the Detention Center.

(Citations to record omitted). The court concluded that CoreCivic's decision to discard the chair "was not made with fraudulent or ill intent." Ms. Calabria objects to this conclusion by the trial court as being "immaterial." Her position is incorrect. While intentional misconduct is not a prerequisite to a court's decision to impose sanctions for spoliation, it is one of the factors for the court to consider. *See id.* (listing as a factor "the culpability of the spoliating party in causing the destruction of the evidence, including evidence of intentional misconduct or fraudulent intent").

## B. The incident report

With respect to the incident report that was lost, the trial court noted that the report "contained only a brief, one-paragraph summary of what took place in connection with the incident and was prepared according to regular procedure."[1] In deposition testimony, a former CoreCivic employee and former warden explained the large volume of documents that CoreCivic generated and maintained. The trial court found "no evidence that the

---

[1] The trial court also noted that, "The parties do not dispute that [Ms. Calabria] informed CoreCivic that she did not want to complete an incident report."

incident report was intentionally misplaced." Rather, the court concluded, the report was "simply lost," and the loss of a single piece of paper did not warrant sanctions.

Ms. Calabria objects to the trial court's citation of *Alumbaugh v. Wackenhunt Corp.*, No. M2016-01530-COA-R3-CV, 2018 WL 5733293, at \*10 (Tenn. Ct. App. Oct. 31, 2018), as support for its conclusion that "[t]he inadvertent and unintentional misplacement of a single piece of paper does not warrant sanctions." Ms. Calabria argues that the trial court misstated the law. We agree with Ms. Calabria that *Alumbaugh* is distinguishable from the present case in some respects.[2] However, we find no error in the trial court's citation of the case, which is consistent with the trial court's conclusion that the unintentional loss of a single document would not justify sanctions.

## C. Video footage

With respect to CoreCivic's failure to preserve the footage from the video cameras in the visitation room, the trial court concluded that, "CoreCivic has established that neither the circumstances nor anything [Ms. Calabria] did or said led them to believe the surveillance video footage would be needed in the future." Further, the court noted that, "The circumstances of the incident show that CoreCivic did not have reason to believe the surveillance video footage would be needed in the future."

In her brief, Ms. Calabria devotes much of her argument to the trial court's quotation of language from *Tolson v. Washburn*, No. 3:19-CV-00175, 2022 WL 1479942, at \*7 (M.D. Tenn. May 10, 2022), to the effect that sanctions would not be warranted if the evidence was destroyed by routine overwriting, not "destroyed by the defendants acting with a culpable state of mind." Ms. Calabria correctly points out that the federal standards for spoliation sanctions differ from the Tennessee standards and that, under Tennessee law, the analysis is based upon the totality of the circumstances and intentional conduct is only one factor. *See Tatham*, 473 S.W.3d at 746; *Tolson*, 2022 WL 1479942, at \*7. Looking

---

[2] In the *Alumbaugh* case, a wrongful death action against Wackenhut Corporation, the employer of the security guard who killed the plaintiff's father, the trial court denied the plaintiff's request for a special jury instruction on missing evidence (which would have called for a negative inference from the defendant's failure to offer the missing evidence into evidence). *Alumbaugh*, 2018 WL 5733293, at \*10. The basis for the requested jury instruction was Wackenhut's failure to produce the incident reports prepared by the security guard each time he used his handcuffs. *Id.* Wackenhut was not able to locate the documents. *Id.* Wackenhut's corporate representative assumed that some of the documents had been "accidentally shredded during the relocation of Wackenhut's Nashville office" and denied that the documents had been intentionally destroyed. *Id.* The claim at issue was for negligent supervision. *Id.* Although the evidence did not definitively establish that Wackenhut ever had the documents in its possession, the more salient point cited by this Court was that the plaintiff had not established that these reports constituted "evidence that a reasonable person under these circumstances would have offered into evidence at trial if they had been favorable" because the evidence would not have been "capable of shedding light on a material contested issue." *Id.*

at the trial court's analysis, however, we see no indication that the trial court required intentional misconduct as a prerequisite to sanction. The court described *Tolson* as "finding sanctions unwarranted for the automatic and routine overwriting of surveillance video footage." The trial court focused its decision not to impose sanctions on CoreCivic's routine practice (automatically overwriting video footage unless the surrounding circumstances warranted preservation) and whether the circumstances of this case would have required preservation.

In concluding that CoreCivic did not have any notice or reason to believe that the footage would be relevant in the future, the trial court stated:

> After the incident, [Ms. Calabria] got up and said she was "fine" and did not need additional assistance. She did not have any obvious injuries and was able to walk to her car. [Ms. Calabria] is absolutely correct that injuries do not always present immediately. However, for the purposes of this Motion for Sanctions, CoreCivic must have had a reason to preserve the footage. CoreCivic has established that neither the circumstances nor anything [Ms. Calabria] did or said led them to believe that surveillance video footage would be needed in the future.
> CoreCivic argues they were completely unaware [Ms. Calabria] was considering litigation against it until she served them with the Complaint. . . . Before [Ms. Calabria filed suit, she] never threatened a lawsuit or sent a notice to CoreCivic instructing it to preserve certain evidence. At the time of the incident, she informed CoreCivic that she did not want to complete an incident report.

Ms. Calabria argues that the incident presented "exactly the sort of circumstance that is appropriate for preservation." The trial court reached a different conclusion. Ms. Calabria has not established that the trial court abused its discretion by misapplying the law or acting against the substantial weight of the evidence. *See Mercer*, 134 S.W.3d at 133.

After discussing all three of the pieces of evidence at issue in Ms. Calabria's motion, the trial court reached the following conclusion:

> In considering the totality of the circumstances, this Court finds Plaintiff's Motion for Sanctions should be denied. The chair and the video were disposed of or deleted in accordance with routine practice and not to conceal or destroy evidence. The incident report was inadvertently lost and was recreated by Officer Kuhn upon request. Further, CoreCivic had no reason to anticipate litigation until 364 days after the incident. Plaintiff has not met the burden of showing that spoliation sanctions are appropriate, and her Motion for Sanctions should be DENIED.

From the record, we cannot conclude that "the trial court based its ruling on an incorrect legal standard" or "acted inconsistently with the substantial weight of the evidence." *Tatham*, 473 S.W.3d at 748. Ms. Calabria has not established that the trial court abused its discretion, and this Court cannot overturn the trial court's decision to deny sanctions unless the trial court abused its discretion. We, therefore, find no error in the trial court's decision to deny the motion for sanctions.

## II. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must submit evidence either "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06.

To prevail on a negligence claim, the plaintiff must prove the following elements: (1) the defendant owed the plaintiff a duty of care, (2) breach of the duty of care, (3) an injury to the plaintiff, (4) cause in fact, and (5) proximate cause. *Jobe v. Goodwill Indus. of Middle Tenn.*, No. M2017-02299-COA-R3-CV, 2018 WL 2671613, at *2 (Tenn. Ct. App. June 4, 2018). A property owner is required to exercise due care to "either remov[e], or warn[ ] against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014). Thus, in a premises liability case, a plaintiff must also prove that the dangerous condition was caused or created by the defendant or that the defendant had actual or constructive knowledge of the dangerous or defective condition prior to the incident. *Id.*

In its motion for summary judgment, CoreCivic asserted that Ms. Calabria's claim failed as a matter of law because "[s]he has presented no evidence showing what the Chair's alleged dangerous condition actually was, much less any evidence showing who or

what caused the alleged dangerous condition." CoreCivic further argued that Ms. Calabria could not provide that CoreCivic had actual or constructive notice of the alleged dangerous or defective condition. The trial court granted summary judgment to CoreCivic on both of these grounds.

The question before this Court is whether Ms. Calabria met her burden to "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06. We begin by examining the issue of whether the trial court properly concluded that Ms. Calabria "failed to present any evidence of the nature of the Chair's alleged dangerous condition." As Ms. Calabria points out, at this stage, her evidence "must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Martin*, 271 S.W.3d at 84. Moreover, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* Ms. Calabria's position is that there is an issue of material fact because of the testimony of her son, Mr. Johnson, that he witnessed previous incidents of inmates sitting on the same kind of gray plastic chair at issue here when the chairs collapsed, and that he informed CoreCivic employees of these incidents. We cannot agree with Ms. Calabria's argument.

To establish premises liability, a plaintiff "must first prove that a 'dangerous or defective condition' existed on the owner's premises." *Lynch v. Poe*, No. M2021-00867-COA-R3-CV, 2022 WL 4112706, at *6 (Tenn. Ct. App. Sept. 9, 2022) (quoting *Nee v. Big Creek Partners*, 106 S.W.3d 650, 653-54 (Tenn. Ct. App. 2002)). The mere fact that a person "'falls from a chair, or that a seat or chair collapses, does not of itself establish negligence where there is no showing that it was defective.'" *Jobe*, 2018 WL 2671613, at *5 (quoting 62A AM. JUR.2d *Premises Liability* § 528). Without proof of a dangerous or defective condition, "an owner or occupier cannot be held liable for failing to take action in order to remedy the supposed condition." *Nee*, 106 S.W.3d at 654. Even if we assume that Mr. Johnson's testimony is true, Ms. Calabria has not shown that a dangerous or defective condition existed in the chair upon which she sat on the day of the accident. A plaintiff must submit proof as to the nature of the alleged defect or weakness or why the malfunction occurred. *See id.* at 654. Mr. Johnson's testimony does not establish the circumstances in which the chairs collapsed in the incidents he previously witnessed, why the chairs collapsed, or that the chair at issue had a similar defect. There is no evidence from which a fact finder could reasonably infer that a dangerous or defective condition existed in the chair in which Ms. Calabria sat on the day of the accident. Like the trial court, we conclude that no genuine issues of material fact remained and that CoreCivic was entitled to summary judgment.[3]

---

[3] In light of our conclusion, we need not address the alternate ground for summary judgment—the absence of a genuine issue of material fact as to whether CoreCivic had constructive notice of the alleged defect.

As to Ms. Calabria's third issue (whether the trial court erred in granting summary judgment without considering CoreCivic's failure to preserve evidence), the record shows that she did not raise the issue or make this argument at the trial level. We, therefore, consider the issue waived. *See Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996) ("[I]ssues raised for the first time on appeal are waived.").

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Ann Calabria, for which execution may issue if necessary.


/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE